<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DAVID L. ABRAMSON, M.D., as an assignee, authorized representative, and attorney-in-fact of his patient B.H., <br><br> Plaintiff, <br><br> v. <br><br> AETNA LIFE INSURANCE COMPANY, <br><br> Defendant. | Case No. 2:22-cv-05092 (BRM) (CLW) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant Aetna Life Insurance Company's ("Aetna") Motion to Dismiss (ECF No. 8) Plaintiff David L. Abramson, M.D.'s ("Dr. Abramson") Complaint (ECF No. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6). Dr. Abramson filed an Opposition on November 7, 2022. (ECF No. 12.) Aetna filed a Reply on November 14, 2022. (ECF No. 15.) Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Aetna's Motion to Dismiss is **GRANTED IN PART**, and Dr. Abramson's Complaint is **DISMISSED WITHOUT PREJUDICE** and with leave to amend.

## I.   BACKGROUND

For the purpose of this Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Dr. Abramson. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory*

*Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

Dr. Abramson is a board-certified, fellowship-trained plastic surgeon, who is the Acting Associate Chief of Surgical Services at Englewood Hospital and Medical Center. (ECF No. 1 ¶ 1.) Aetna is a health insurance company based in Hartford, CT. (*Id.* ¶ 2.) Aetna underwrites and administers commercial health plans, wherein they incur healthcare expenses on behalf of their insureds and reimburse them subject to each plan's terms. (*Id.* at ¶ 3.) At all relevant times, B.H. was the beneficiary of a self-funded employee welfare benefit plan administered by Aetna through his employer, Costco Wholesale ("Costco"). (*Id.* ¶ 4–5.) Specifically, B.H. received health benefits through the Costco Wholesale Corporation Employee Benefits Program – Aetna Select Open Access (the "Plan"). (*Id.*) There is no dispute the Plan is an ERISA plan. (*Id.* ¶ 4.)

Aetna is both the "claims administrator" and "claims fiduciary" of the Plan. (*Id.* ¶ 6.) Under the Plan, a "claims administrator" is defined as "the third-party that handles the day-to-day claims administration of a plan." (*Id.*) Further, a "claims fiduciary" is defined as the entity with "the sole and exclusive discretionary authority and control to determine claims for benefits . . . with respect to their determinations regarding claims for benefits under the plan and are, for jurisdictional purposes, the proper named defendant in a lawsuit under ERISA Section 502(a)." (*Id.*)

The Plan only pays benefits for covered services if the beneficiary uses an "in-network" provider. (*Id.* ¶ 17.) Therefore, "out-of-network care is not covered and will be [the beneficiary's] responsibility to pay, *except in the case of an emergency*." (*Id.* ¶ 18.) Under the Plan, an emergency medical condition is defined as:

> A recent and severe medical condition including, but not limited to, severe pain which would lead a prudent layperson possessing an average knowledge of medicine and health to believe that his or her

2

> condition, illness or injury is of such a nature that failure to get immediate medical care could result in:
> - Placing the person's health in serious jeopardy
> - Serious impairment to bodily function
> - Serious dysfunction of a body part or organ

(*Id.* ¶ 19.) The dispute in this case, generally, centers on whether B.H.'s procedure qualified as an "emergency service" under the Plan, though that is not the subject of this opinion.

On May 22, 2020, B.H. presented to Englewood Hospital with a diagnosis of melanoma of the trunk. (*Id.* ¶ 21.) B.H. underwent an excision of the sentinel node performed by Dr. Brower, but unexpectedly resulted in a large complex wound of the abdomen, along with a "huge defect" extending from the right side of the abdomen. (*Id.* ¶¶ 21–22.) Dr. Abramson was intraoperatively called to the operating room to evaluate the wound. (*Id.* ¶ 23.) Dr. Abramson identified an umbilical hernia, extending into the surrounding fascia, where the umbilicus had been removed. (*Id.* ¶ 24.) Upon examination of the situation, Dr. Abramson determined the condition's severity warranted immediate medical attention and that further delay could compromise B.H.'s well-being. (*Id.* ¶ 25.) Because of the threat to B.H.'s health, and considering the additional risk of undergoing a second major surgery, Dr. Abramson performed the necessary operation during Dr. Brower's procedure. (*Id.*) This surgery included an umbilical/ventral hernia repair and a fasciocutaneous flap procedure. (*Id.* ¶ 26.)

A ventral hernia refers to the protrusion of the intestine or other tissue through a weakness or gap in the abdominal wall. (*Id.* ¶ 27.) An umbilical hernia is a specific type of ventral hernia, which to repair, requires an incision is made around the belly button. (*Id.*) The contents of the hernia are pushed back into the abdomen and then the wound to the abdominal wall is addressed. (*Id.*) A fasciocutaneous flap procedure, when performed in conjunction with an umbilical hernia repair, consists of an excision to the skin and tissue flap for positioning over the complex

abdominal wall. (*Id.* ¶ 28.) Both Dr. Abramson and Dr. Brower performed the extensive emergency procedures on B.H. (*Id.* ¶ 29.)

Shortly thereafter, Dr. Abramson submitted a Health Insurance Claim Form to Aetna for the out-of-network emergency services provided to B.H., totaling $80,200.00. (*Id.* ¶ 30.) On July 24, 2020, Aetna issued an Explanation of Benefits ("EOB") to Dr. Abramson, paying nothing on the claim and explaining, "Services by a provider who does not participate with us or the member's plan network are not covered unless the services of the non-participating provider are pre-certified." (*Id.* ¶ 31.) Therefore, B.H. was left with the outstanding balance of $80,200.00. (*Id.* ¶ 32.)

Pursuant to the administrative guidelines described in the Plan, on December 22, 2020, Dr. Abramson submitted a timely appeal of the EOB through counsel. (*Id.* ¶ 33.) Aetna denied review of the claim's denial citing a lack of authorization. (*Id.*) Then, on February 26, 2021, Dr. Abramson, through counsel, submitted a timely second appeal, which was denied because the claim had not been processed properly. (*Id.* ¶ 34.) Again, on May 18, 2021, Dr. Abramson, through counsel, filed a request for external appeal, which Aetna declared "ineligible." (*Id.* ¶ 35.) Aetna did not consider any information submitted by Dr. Abramson at any time during the review process. (*Id.* ¶ 37.) Dr. Abramson claims Aetna denied B.H. his right to a full and fair review of the claim by failing to comply with the appeals standards outlined in 29 C.F.R § 2560.503-1, and in violation of ERISA and the rules promulgated thereunder, as well as its duties under the Plan, specifically those involving emergency procedures. (*Id.* ¶¶ 37–38.)

On August 17, 2022, Dr. Abramson filed a one-count Complaint as an assignee, duly-appointed authorized representative, and attorney-in-fact of his patient, B.H.,[1] against Aetna for Plan Benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). (ECF No. 1.) The Complaint alleges Aetna failed to pay benefits to Dr. Abramson for services provided to B.H., in violation of Aetna's obligations to B.H. as set forth in its Plan. (*Id.* ¶ 39–41.) Because B.H. was a beneficiary of the Plan, and because Dr. Abramson is B.H.'s assignee, authorized representative, and/or attorney-in-fact, Dr. Abramson alleges he has standing to bring this cause of action to enforce rights created by the Plan and to seek benefits relating to the services he performed. (*Id.* ¶ 41.)

On October 11, 2022, Aetna moved to dismiss Dr. Abramson's Complaint. (ECF No. 8.) Dr. Abramson filed an Opposition on November 7, 2022 (ECF No. 12) and Aetna filed a Reply on November 14, 2022 (ECF No. 15).

## II.    Legal Standard

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* (alterations in original). A court is "not bound to accept as true a legal

---

[1] B.H.'s New Jersey Power of Attorney, naming Dr. Abramson as his attorney-in-fact, is attached to the Complaint at Exhibit 1. It is dated April 26, 2022. (ECF No. 1, Ex. 1.)

conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986). Instead, assuming factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id*. at 678. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

## III. DECISION

Aetna argues Dr. Abramson's Complaint should be dismissed for failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 8-1.) Specifically, Aetna argues the Complaint fails to state a claim because: (1) Dr. Abramson lacks standing to pursue a claim under ERISA § 502(a)(1)(B); (2) the Complaint does not plausibly tie Dr. Abramson's demand for benefits to any Plan term; and (3) the Complaint fails to plausibly plead that Dr. Abramson or B.H. has exhausted administrative remedies. (*Id.*) In opposition, Dr. Abramson contends: (1) Dr. Abramson can bring an ERISA claim on behalf of B.H. as his attorney-in-fact; (2) the Complaint plausibly alleges that B.H. is entitled to benefits under the Plan;

and (3) the Complaint properly pleads exhaustion of administrative remedies. (ECF No. 12).
Alternatively, Dr. Abramson requests leave to replead. (*Id.*) In reply, Aetna submits: (1) Dr.
Abramson concedes a lack of standing as assignee or authorized representative; (2) Dr. Abramson
cannot circumvent the anti-assignment provision in the Plan by claiming he is B.H.'s attorney-in-
fact; (3) the Opposition fails to rebut Dr. Abramson's lack of Article III standing; (4) the Complaint
fails to tie Dr. Abramson's demand for benefits to any Plan term; (5) Dr. Abramson fails to
plausibly plead exhaustion of administrative remedies; and (6) the Court should deny leave to
amend. (ECF No. 15).

### A.      Standing to Sue under ERISA § 502(a)(1)(B)

Aetna argues Dr. Abramson lacks standing to bring a claim under ERISA § 502(a)(1)(B)
as an assignee, authorized representative or attorney-in-fact, as alleged in Dr. Abramson's
Complaint. Specifically, Aetna argues Dr. Abramson lacks standing as an assignee because B.H.'s
Plan prohibits assignments through a valid anti-assignment provision. (ECF No. 8-1 at 1.) Further,
while "designated authorized representatives" are permitted under ERISA's claims procedure
regulation to pursue internal administrative appeals on a plan member's behalf, Aetna argues that
is not an independent source of standing under ERISA § 502(a)(1)(B). (*Id.*) Aetna also contends
Dr. Abramson's effort to avoid the anti-assignment provision by claiming he is B.H.'s attorney-
in-fact is a "legal nullity" because Dr. Abramson is pursuing the lawsuit for his own benefit, not
B.H.'s. (*Id.*) Dr. Abramson responds that he is no longer attempting to proceed through an
assignment of benefits, and his role as an authorized representative is "irrelevant." (ECF No. 12 at

4-5.) Instead, Dr. Abramson reiterates he has standing pursuant to the operation of a valid power of attorney. (*Id.*) This Court agrees, in part, with Dr. Abramson.

       1.   <u>Dr. Abramson Lacks Standing as an Assignee</u>

First, Dr. Abramson's Complaint alleges he has standing to bring this action by and through an assignment of benefits from B.H. (ECF No. 1 ¶ 12.) Aetna argues Dr. Abramson is precluded from asserting standing as an assignee because B.H.'s Plan prohibits assignments. (ECF No. 8-1 at 5-7.) Dr. Abramson ultimately concedes this point.[2] Aetna's position is correct.

A civil action under ERISA § 502(a)(1)(B) may be brought by "a participant or beneficiary . . . to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B); *see also N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015). A "participant" is "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan," and a "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(7)-(8). Healthcare providers, who are neither participants nor beneficiaries, lack direct standing under ERISA, but may obtain "derivative standing" by assignment from a plan

---

[2] Dr. Abramson does not dispute that an anti-assignment clause in B.H.'s Plan would nullify his standing argument as it pertains to his purported role as an assignee. (*See* ECF No. 1 ¶ 7 ("Dr. Abramson is authorized pursuant to an assignment to bring this claim on his own behalf, or alternatively on behalf of B.H. as his authorized representative and attorney-in-fact to the extent his Plan contains an 'anti-assignment clause.'"); ECF No. 12 at 6 ("Further, Aetna's exploration of Dr. Abramson's lack of ability to bring a claim through an assignment of benefits in the face of the Plan's anti-assignment provision is entirely irrelevant. This is because, as Aetna concedes, Dr. Abramson is not attempting to proceed through an assignment of benefits. Accordingly, this argument need not be further addressed.")).

participant or beneficiary. *N. Jersey Brain & Spine Ctr.*, 801 F.3d at 372 (citing *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014)).

Providers gain standing to sue for payment under ERISA § 502(a) when a patient assigns payment of insurance benefits to the providers. *Id.* at 372–73. However, where the participant's plan contains an unambiguous anti-assignment provision, providers are precluded from derivative standing. *American Orthopedic & Sports Medicine v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 453 (3d Cir. 2018) (holding anti-assignment clauses in ERISA-governed health insurance plans are enforceable); *Univ. Spine Ctr. v. Aetna, Inc.*, 774 F. App'x 60, 63 (3d Cir. 2019) (relying on *American Orthopedic* to hold an anti-assignment provision unambiguously prohibited assignment of a participant's right to benefit payments, preventing derivative standing).

In this case, B.H.'s plan contained an anti-assignment provision. (*See* ECF No. 8-1, Ex. A, p. 139.) The provision reads:

> Anti-Assignment. Health benefits and other rights related to the program may not be sold, transferred, pledged or assigned, and any attempt to do so will be void. The payment of benefits directly to a health care provider, if any, will be done as a convenience to you and your covered dependents and will not constitute an assignment of health benefits or other rights under the program.

(*Id.*) Anti-assignment provisions of this nature are consistently enforced by this Court. *See Ross Cooperman, MD, LLC v. Horizon Blue Cross Blue Shield*, No. 19-19225, 2020 WL 8921018, at *2 n.2 (D.N.J. Sep. 10, 2020) (enforcing the following provision: "[R]ights and benefits under the Plan are not assignable, either before or after services and supplies are provided."); *Shah v. Horizon Blue Cross Blue Shield of N.J.*, No. 16-5946, 2018 WL 3218680, at *2 (D.N.J. June 29, 2018) (enforcing the anti-assignment provision, "You cannot assign any benefit or monies due from this

health plan to any person, corporation, or other organization without [Blue Cross's] written consent. Any assignment by you will be void.").

This Court finds the anti-assignment provision in B.H.'s Plan is unambiguous, and therefore, any purported assignment of benefits from B.H. to Dr. Abramson is not an independent source of standing to bring this action.

2.   Dr. Abramson Lacks Standing as an Authorized Representative

Next, Dr. Abramson contends as B.H.'s "authorized representative," he may bring this action on behalf of B.H. under ERISA's "Claims Procedure" regulation, 29 C.F.R. § 2560.503-1. (ECF No. 1 at ¶ 13.) Aetna argues Dr. Abramson may have authority to bring an internal administrative appeal as B.H.'s authorized representative, but not a lawsuit. (ECF No. 8-1 at 7-8.) Dr. Abramson no longer disputes this point. (ECF No. 12 at 6 ("Whether or not Dr. Abramson can bring an ERISA claim here as B.H.'s authorized representative is largely irrelevant, as Dr. Abramson is operation [sic] under a valid POA, and asserts standing as such.")). The Court agrees that Dr. Abramson does not have authority to bring this lawsuit on behalf of B.H. as an "authorized representative."

The regulation provides, in relevant part, employee benefit plans must maintain "reasonable" internal administrative appeals' frameworks. 29 C.F.R. § 2560.503-1(b). Claims procedures are "reasonable" where they "do not preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination." *Id*. at § 2560.503-1(b)(4). However, 29 C.F.R. § 2560.503-1 applies only to internal administrative appeals, and not the resulting federal lawsuits. *See Cooperman v. Horizon Blue Cross Blue Shield of N.J.*, No. 19-19225, 2020 WL 5422801, at *3 (D.N.J. Sep. 10, 2020) ("This Court has repeatedly held that this regulation applies only to internal claims and

appeals, not to federal lawsuits brought after the plan member exhausts those appeals.") (citing *Menkowitz v. Blue Cross Blue Shield of Illinois*, No. 14-2946, 2014 WL 5392063, at *3 (D.N.J. Oct. 23, 2014)); *Joseph D. Alkon, M.D., PC on Behalf of G.D. v. CIGNA Health and Life Ins. Co.*, No. 20-02365, 2021 WL 3362562, at *4 (D.N.J. Aug. 3, 2021); *Atl. Neurosurgical Specialists P.A. v. United Healthcare Grp., Inc.*, No. 20-13834, 2021 WL 3124313, at *9 n.8 (D.N.J. July 22, 2021); *Prestige Inst. for Plastic Surgery, P.C. v. Aetna Life Ins. Co.*, No. 20-10371, 2021 WL 1625117, at *3 (D.N.J. Apr. 27, 2021).

Accordingly, while Dr. Abramson's purported status as a "designated authorized representative" may give him standing to pursue an internal administrative appeal of the denial of benefits on behalf of B.H., it does not grant him standing to bring this lawsuit.

### 3.   Dr. Abramson Has Standing as an Attorney-in-Fact

Finally, Dr. Abramson claims he has standing under 29 U.S.C. § 1132(a)(1)(B) as B.H.'s designated "attorney-in-fact" pursuant to a New Jersey Durable Power of Attorney executed by B.H. in favor of Dr. Abramson. (ECF No. 1 at ¶ 14; Ex. A.) While Aetna acknowledges a medical provider might, in appropriate circumstances, bring an action to recover benefits for a patient's benefit through a valid power of attorney, Aetna argues: attorneys-in-fact may not prosecute lawsuits for their own benefit; Courts reject provider standing in similar contexts; and there is no allegation in the Complaint the patient sustained any injury for which he must rely on an attorney-in-fact to obtain redress. (ECF No. 8-1 at 8–18.) Dr. Abramson maintains he can assert a claim on behalf of B.H. through a valid power of attorney and he has adequately pleaded a particularized injury sufficient to establish standing. (ECF No. 12 at 6-20.)

As explained by the Third Circuit in *American Orthopedic*:

> Assignments and powers of attorney differ in important respects
> . . . . An assignment purports to transfer ownership of a claim to the

>assignee, giving it standing to assert those rights and to sue on its
>own behalf. Thus, a plan trustee can limit the ability of a beneficiary
>to assign claims because, among the parties' power to limit the rights
>created by their agreement, is the power to restrict ownership
>interest to particular holders. A power of attorney, on the other hand,
>does not transfer an ownership interest in the claim, but simply
>confers on the agent the authority to act on behalf of the principal.

890 F.3d at 454–55. In *American Orthopedic*, the Third Circuit refused to accept that an

unambiguous anti-assignment clause necessarily rendered a valid power of attorney futile. *Id.* at

455.

The Court agrees individual physicians may, in some circumstances, act as attorneys-in-

fact on behalf of their patients, even in the face of valid, unambiguous anti-assignment clauses.

*Id.*; *Somerset Orthopedic Assocs., P.A. v. Horizon Healthcare Servs., Inc.*, No. 19-8783, 2021 WL

3661326, *4 (D.N.J. Aug. 18, 2021); *Med-X Glob., LLC v. Azimuth Risk Sols., LLC*, No. 17-13086,

2018 WL 4089062, at *2 n.2 (D.N.J. Aug. 27, 2018). In "appropriate circumstances," an anti-

assignment clause "does not have any bearing on the ability to act through a valid power of

attorney." *Somerset Orthopedic*, 2021 WL 3661326 at *4. In dicta, the Third Circuit cited non-

exhaustive circumstances where a power of attorney may be appropriate in the healthcare context,

including

>where patients must rely on their agents when they anticipate even
>short-term incapacitation after medical procedures, and where those
>who anticipate longer-term unavailability, like deployed service
>members or those suffering from progressive conditions, depend on
>their designated agents to handle their medical claims and other
>affairs in their absence.

*American Orthopedic*, 890 F.3d at 455. In *Somerset Orthopedic*, the Court clarified that uses of a

power of attorney are not limited to those circumstances. 2021 WL 3661326 at *4. Indeed, the

Third Circuit has "left open the possibility that a patient could grant her provider a valid power of

attorney to pursue claims for benefits on her behalf, for most out-of-network providers," regardless

of any anti-assignment clause. *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 228–29 (3d Cir. 2020).

This Court acknowledges that the Third Circuit has refrained from recognizing an assignment of benefits masking as a power of attorney. *See Tamburrino v. UnitedHealth Grp. Inc.*, 2022 WL 1213467, *3 (D.N.J. April 25, 2022) (denying standing where the "[p]urported POA qualifie[d] as an assignment, not a power of attorney, and [was] barred by the anti-assignment provision in [the patient's] insurance plan" which, "read as a whole . . . 'purports to transfer ownership of' [the patient's] rights to recovery to [the doctor] – an arrangement consistent with an assignment"); *Personal Image, PC v. Tech Briefs Media Grp. Med. Plan*, No. 20-3747, 2021 WL 486905, *4 n.5 (D.N.J. Feb. 10, 2021) (finding the purported power of attorney failed because the plaintiff sought to collect payment from the patient's insurance company, and "not to act on [the patient's] behalf in a broader capacity to encompass other ERISA-based claims that are not barred by the anti-assignment clause"). This is because the granting of a power of attorney is not an assignment, and therefore, it "does not enable the grantee to bring suit in his own name." *New Jersey Spine & Orthopedics, LLC v. Bae Sys., Inc.*, No. 18-10735, 2020 WL 491258, *2 (D.N.J. Jan. 29, 2020) (citing *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 12-18 (2d. Cir. 1997)); *Lutz Surgical Partners PLLC v. Aetna, Inc.*, No. 15-02595, 2021 WL 2549343, *6 (D.N.J. June 21, 2021) (denying standing where the plaintiffs litigated in their own names, not on behalf of their patients). Therefore, where a Complaint seeks to enforce the rights of an attorney-in-fact, rather than the rights of a patient, and there is no allegation the patient suffered any harm,

the attorney-in-fact's standing is barred by any anti-assignment provision. *See New Jersey Spine & Orthopedics,* 2020 WL 491258 at *2; *Lutz Surgical Partners*, 2021 WL 2549343 at *6.

A similar scenario was addressed by this Court in *Somerset Orthopedic*. There, the plaintiffs were out-of-network healthcare providers who alleged the defendants failed to fully reimburse their patients, who were insured under the defendants' health benefit plans. *Somerset Orthopedic*, 2021 WL 3661326 at *2. The plaintiffs asserted their claims on behalf of the patients pursuant to both an assignment of benefits and executed powers of attorney. *Id.* The defendants challenged the plaintiffs' standing, arguing, in relevant part, that the plaintiffs were asserting the claims in their own names, and powers of attorney do not enable grantees to bring suit on their own behalf. *Id.* at *5. The Court disagreed and found the Complaint sufficiently demonstrated that the plaintiffs were bringing the claims on behalf of their patients, and clearly stated the outstanding amounts owed, so there was no legal impediment to standing through the validly executed powers of attorney, despite any anti-assignment provision. *Id.* In *Atl. Neurosurgical Specialists P.A. v. United Healthcare Grp. Inc.*, the Court applied the decision in *Somerset Orthpedic* to find statutory standing for plaintiff-physicians to assert ERISA claims on behalf of patients by virtue of a duly-executed power of attorney where the Complaint: (1) alleged the physician-plaintiffs asserted claims as attorneys-in-fact on behalf of their patients; and (2) stated the specific dollar amount each patient was owed. No. 20-13834, 2022 WL 970317, *8 (D.N.J. Mar. 31, 2022).

In this case, Dr. Abramson is, indeed, bringing a claim as an individual on behalf of B.H., the Plan beneficiary and patient, through a duly-authorized power of attorney in favor of Dr. Abramson. (ECF No. 1 ¶ 14.) The Complaint states the amount of debt B.H. is responsible for based on Aetna's alleged breach of obligations. (*Id.* at ¶¶ 30–38.) In essence, the pleading satisfies

the considerations set forth in *Somerset Orthopedic*, 2021 WL 3661326 at *5. *See also Atl. Neurosurgical*, 2022 WL 970317 at *8.

Aetna relies upon the reasoning set forth in *Tamburrino* to challenge Dr. Abramson's standing. In *Tamburrino*, a plaintiff-physician brought an action under ERISA for the denial of benefits on behalf of his patient, who was denied reimbursement fees from his insurance company after the services were rendered. 2022 WL 1213467 at *2. The defendants argued the physician-plaintiff's claims had to be dismissed because the purported power of attorney was, in fact, an assignment of benefits barred by the anti-assignment provision in the patient's insurance plan. *Id.* at *3. The Court recognized the principles set forth in *American Orthopedic*, that anti-assignment provisions do not preclude insureds from granting valid powers of attorney to confer an agent to assert a claim of his or her behalf, however, the Court explained the power of attorney in that case functioned as an assignment in violation of the provision in the patient's insurance plan. *Id.* The *Tamburrino* Court explained, when read as a whole, the power of attorney effectively transferred only the patient's interest in the recovery of the action to the plaintiff-physician as if the claim was his own, rather than on the patient's behalf, like an assignment of benefits. *Id.* at *4. In essence, the power of attorney allowed the plaintiff-physician to pursue the defendants for payment of the services, not for relief on behalf of the patient. *Id.*

The Court declines to adopt the narrow holding articulated in *Tamburrino*, and instead, applies the general test articulated in *Somerset* and *Atlantic Neurosurgical Specialist P.A.* Ultimately, and undisputedly, B.H. has ownership of his claim. As such, B.H. may confer authority, pursuant to a valid power of attorney, upon an attorney-in-fact, if he so chooses, to pursue a claim on his behalf. The anti-assignment clause in B.H.'s Plan has no more power "to strip [Dr. Abramson] of [his] ability to act as [B.H.'s] agent than it does to strip [B.H.] of his

16

interest in his claim." *American Orthopedic*, 890 F.3d at 455. This is particularly true in the healthcare context. *Id.* The Complaint sufficiently alleges that Dr. Abramson is asserting the claim for benefits on B.H.'s behalf; attaches a valid, rule-compliant power of attorney; and states the amount B.H. remains responsible after the alleged emergency services.

The case raised by Aetna in its Notice of Supplemental Authority on April 12, 2023 (ECF No. 20) does not change this Court's analysis.[3] In *Hutchins v. Teamsters Western Region*, a patient, Mr. Hutchins, underwent an emergency procedure involving the services of an out-of-network provider, Dr. Tainsh, and executed a power of attorney allowing his doctor to collect the monies due for the surgery from his insurance company. No. 22-4583, 2023 WL 2859803, *1 (D.N.J. Apr. 10, 2023). Mr. Hutchin's insurance policy included a valid anti-assignment clause. *Id.* at *2. Dr. Tainsh filed a one-count complaint seeking to enforce Mr. Hutchin's plan benefit on his behalf. *Id.* at *1. Defendant insurance company moved to dismiss, arguing Dr. Tainsh's claims were being brought via an invalid assignment masquerading as a power of attorney. *Id.* at *2. Crucially, the insurance company also argued the provider was attempting to collect against the policy in the guise of a claim brought on behalf of the patient, when any collection from Mr. Hutchins was barred by the New Jersey Out of Network Consumer Protection Transparency, Cost, Containment and Accountability Act ("NJNSA"). *Id.* In other words, Mr. Hutchins could not be held liable or otherwise responsible for any debt related to the services and purportedly owed to Dr. Tainsh

---

[3] The Court similarly reviewed and considered Plaintiffs' Response to the Notice of Supplemental Authority, filed on April 27, 2023. (ECF No. 23.)

because the NJNSA precluded the healthcare provider from collecting from Mr. Hutchins under the specific billing circumstances.[4] *Id.* at *3.

The Court held "in certain instances, a power of attorney can enable an agent to benefit a principal by handling the principal's affairs and ensuring medical claims are addressed as needed." *Id.* at *4. However, "any financial claim and recovery Dr. Tainsh achieve[d] [would] not benefit Mr. Hutchins." *Id.* Therefore, because Mr. Hutchin's was not at risk of owing the balance of the bill to Dr. Tainsh, the doctor is "not acting as an agent and is instead clearly representing her own interests in an obvious end-run around the anti-assignment provision of the ERISA plan," and in violation of the principles in *American Orthopedic. Id.* Based on the "discreet facts presented," the *Hutchins* Court found the power of attorney was the functional equivalent of an assignment, and Dr. Tainsh lacked standing to pursue the claim. *Id.*

This case does not involve facts similar to those in *Hutchins* that rendered the *Hutchins* power of attorney the "functional equivalent" of an assignment. In *Hutchins*, Dr. Tainsh was precluded, by law, from recovering against Mr. Hutchins, so any recovery by Dr. Tainsh from the insurance company would not be on the patient's behalf, but exclusively for her own. There is no such allegation in this case. In Aetna's Notice of Supplemental Authority, Aetna argues the lack of Dr. Abramson's allegations of B.H.'s injury-in-fact should lead this Court to the same result. (ECF No. 20 at 2-3.) The Court disagrees. The Complaint sufficiently alleges B.H. owes $80,200.00 for the out-of-network emergency services rendered, and Dr. Abramson is seeking to enforce those rights on his behalf. Dr. Abramson is not seeking payment, but coverage for B.H.

---

[4] The NJNSA precludes a healthcare provider from collecting from a patient unless negotiations for reimbursement result in some agreement within thirty days after the patient is billed for services, and until the provider pursues binding arbitration to resolve any dispute for the services. *Id.* at *3. At the time of the case, Dr. Tainsh had not pursued such arbitration. *Id.*

for the services rendered. Accordingly, the Court finds Dr. Abramson has sufficiently pleaded he has standing to sue for the claims alleged. *See Somerset*, 2021 WL 3661326 at *2; *Atl. Neurosurgical Specialists P.A.*, 2022 WL 970317 at *8.

### B.      Failure to State ERISA Claim

Aetna also argues Dr. Abramson's Complaint should be dismissed for failure to state a claim. (ECF No. 8-1 at 18–22.) Specifically, Aetna argues Dr. Abramson's Complaint fails to plausibly tie his demand for benefits to any specific plan term, and further, that it does not plausibly plead Dr. Abramson exhausted the administrative remedies available before pursuing this action. (*Id.*) In opposition, Dr. Abramson contends the Complaint thoroughly identifies the provisions of the Plan under which B.H. is entitled to benefits, and further, that Aetna has fallen "dramatically short" of its burden to conclusively establish Dr. Abramson failed to exhaust the available administrative remedies. (ECF No. 12 at 20–28.) Aetna reiterates in reply that no articulated Plan term specifically entitles B.H. to the amount of $80,200.00 for the emergency services allegedly performed, and that this Court cannot conclude Dr. Abramson has pleaded an exhaustion of remedies. (ECF No. 15 at 5–8.)

### 1.      Dr. Abramson's Complaint Sufficiently Alleges an Exhaustion of Administrative Remedies

Dr. Abramson's Complaint alleges he submitted a Health Insurance Claim Form to Aetna for the emergency services rendered shortly after the procedure. (ECF No. 1 ¶ 30.) On July 14, 2020, Aetna issued an Explanation of Benefits ("EOB"), paying nothing on the claim. (*Id.* at ¶ 31.) On December 22, 2020, Dr. Abramson submitted an appeal, which was denied by Aetna. (*Id.* ¶ 33.) Dr. Abramson then alleges he submitted a second timely appeal, and followed up via phone, but the appeal was again denied. (*Id.* ¶ 34.) On May 18, 2021, Dr. Abramson followed up again, requesting an external appeal, which Aetna denied, without providing any additional insight. (*Id.*

19

¶ 35.) Dr. Abramson contends that at no point in the review process did Aetna consider any information submitted relating to the claim, and therefore, B.H. was denied a full and fair review process. (*Id.* ¶ 37.)

In their moving papers, Aetna explains the Plan has a two-level appeal process. (ECF No. 8-1 at 20 (citing *Kowalewski Cert.*, Ex. A (p.133)).) First, a claimant or his authorized representative must appeal within 180 days of receiving a notice of denial. (*Id.*) If the first-level appeal is denied, the claimant has 60 days to file a second-level appeal. (*Id.*) Aetna alleges Dr. Abramson failed to properly submit the first-level appeal in December 2020, because he failed to attach the required signed authorization form designating himself as B.H.'s representative. (*Id.* at 21.) Therefore, Aetna contends the first-level appeal "denial" was not actually a "denial" but a notification that the appeal process did not commence because the correct authorization form was not provided. (*Id.*) The February 2021 "second-level appeal" was not actually the second-level appeal, but the first-level. (*Id.*) Aetna even notes the denial letter explained Dr. Abramson has the right to file a second-level appeal. (*Id.* (citing ECF No. 1 at ¶ 34; *Kowalewski Cert.*, Ex. F).) Further, Aetna's internal review board responded to Dr. Abramson's letter requesting an external review explaining the claim was not eligible for such review because the process had not gone through the full appeals process. (*Id.* at 22.)

"[A] federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan." *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2022) (quoting *Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir. 1990)). Because "exhaustion of remedies" is considered an affirmative defense, the defendant bears the burden of proving a failure to exhaust. *Rizzo v. First Reliance Standard Life Ins. Co.*, 417 F.Supp.3d 479, 485-86 (D.N.J. Oct. 23, 2019). The exhaustion requirement does not apply where: (1) the administrative

procedure provided for by the plan would be futile; (2) the claimant has been denied meaningful access to the plan's claim procedure; or (3) where a plan expressly requires exhaustion but fails to follow claims procedures consistent with the applicable ERISA regulatory requirements. *Id.* at 486. Where a claimant fails to exhaust the review procedures provided by a ERISA plan, or meet the outlined exceptions, dismissal may be appropriate. *Id.* (citing *D'Amico v. CBS Corp.*, 297 F.3d 287, 293 (3d Cir. 2022)). However, where "[i]t cannot be conclusively established from the complaint whether [the plaintiff] failed to adequately pursue [his] administrative remedies or whether it would have been futile for [him] to have done so," dismissal is not appropriate. *Am. Chriopractic Ass'n v. Am. Specialty Health Inc.*, 625 F. App'x 169, 173 (3d Cir. 2015).

Considering the allegations set forth in the Complaint, and Aetna's competing account set forth in the moving papers, and keeping in mind the burden upon Aetna to prove Dr. Abramson's failure to establish exhaustion or one of the alternatives outlined above, this Court cannot dismiss Dr. Abramson's Complaint for failure to exhaust his administrative remedies at this time. Accordingly, Aetna's arguments for dismissal under this theory are rejected.

### 2. Dr. Abramson's Demand Fails to Sufficiently Identify a Plan Term Supporting the Amount of Damages Claimed

A claim for ERISA benefits "stands and falls by the terms of the plan." *Atl. Plastic & Hand Surgery*, *P.A. v. Anthem Blue Cross Life and Health Ins. Co.*, No. 17-4599, 2018 WL 5630030, at *7 (D.N.J. Oct. 31, 2018) (quoting *Kennedy v. Plan Admin. For DuPont Sav. & Inv. Plan*, 555 U.S. 286 (2009)). It is a plaintiff's burden to "demonstrate that the benefits are actually 'due'; that is, he or she must have a right to benefits that is legally enforceable against the plan." *K.S. v. Thales USA, Inc.*, No. 17-7489, 2020 WL 773166, at *4 (D.N.J. Feb. 18, 2020) (quoting *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 575 (3d Cir. 2006)). In other words, in order for a plaintiff to sufficiently state a claim for relief under ERISA, the plaintiff "must identify a specific provision

of the plan for which a court can infer this legally enforceable right." *Emami*, 2021 WL 4150254 at *5. Under similar circumstances, where a plaintiff's Complaint or moving papers failed to tie the monetary claim for benefits to the plan itself, the plaintiff's Complaint has been dismissed. *See K.S.*, 2020 WL 773166 at *4 ("Once again, because [plaintiff] fails to tie her claim to any provision of the [Plan], the SAC cannot withstand Defendants' Motion to Dismiss."); *Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life and Health Ins. Co.*, No. 17-4600, 2018 WL 1420496, *10 (D.N.J. Mar. 22, 2018) ("[B]ecause the Complaint fails to identify any specific provision in the Plan from which the Court can infer that Plaintiffs were entitled to compensation at the "usual and customary rate" for out-of-network medical services, the Court dismisses without prejudice Plaintiffs' § 502(a)(1)(B) claim for failure to plead sufficient facts to state a claim for relief.").

While Dr. Abramson cited relevant Plan provisions in support of his allegations set forth in the Complaint regarding the emergency services rendered; the amount owed and billed to B.H.; and Aetna's denial of benefits, the Complaint fails to identify any Plan provision that requires Aetna to pay B.H. and/or Dr. Abramson at the amount claimed. Such an allegation is required for Dr. Abramson's cause of action to be sustained. *See Gotham City Ortho., LLC v. Cigna Health & Life Ins. Co.*, No. 21-1703, 2022 WL 2116864, *2 (D.N.J. June 13, 2022) (dismissing the Complaint where the pleading asserted "payment was required at the Usual Customary and Reasonable rates . . . but fail[ed] to put forth a cognizable basis for its assertions or delineate the source of the information and belief undergirding the allegations."); *Atl. Neurosurgical Specialists, PA on behalf of Patient DC v. Anthem Blue Cross and Blue Shield*, No. 20-10415, 2021 WL 4148149, *5 n. 7 (D.N.J. Sept. 10, 2021) (explaining the dismissal of a plaintiff's complaint was warranted because the plaintiff claimed he was improperly denied benefits under the terms of a plan, but failed to cite any provision of the plan providing the brain surgery was fully covered);

*Somerset Ortho. Assocs., P.A. v. Horizon Healthcare Servs., Inc.*, No. 19-8783, 2021 WL 3661326, *7 (D.N.J. Aug. 18, 2021) (dismissing a plaintiff's ERISA claims for failing to identify any plan terms demonstrating that the plaintiff should have been paid the full bill amount). *See also Adv. Ortho. and Sports Med. Instit. on behalf of Patient MS v. Anthem Blue Cross Life and Health Ins. Co.*, No. 10-13243, 2022 WL 1347792, *9 (D.N.J. Apr. 1, 2022) (finding the minimum pleading standards to be met where the plaintiff pleaded the plan covered services rendered outside the service area by non-participating providers, to be paid at the rates set forth in FAIR Health).

It is unclear from the face of the Complaint, or from Dr. Abramson's papers, what Plan provisions entitle B.H. and/or Dr. Abramson to the full amount of $80,200.00 for the emergency services performed. Therefore, the Complaint is deficient as currently pleaded. Accordingly, Aetna's Motion to Dismiss is granted, in part, and Dr. Abramson's Complaint is dismissed, without prejudice, and with leave to refile an Amended Complaint.

## IV.   CONCLUSION

For the reasons set forth above, Aetna's Motion to Dismiss (ECF No. 8) Dr. Abramson's Complaint (ECF No. 1) is **GRANTED, in part,** and Dr. Abramson's Complaint is **DISMISSED WITHOUT PREJUDICE** and with leave to amend.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  May 2, 2023